UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 20-200 SRN/TNL |
| Plaintiff, | ) | **INDICTMENT** |
| v. | ) | 26 U.S.C. § 7201 |
| DANIEL BERGLUND, | ) | |
| Defendant. | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

1. From at least 2010 through at least 2017, Defendant DANIEL BERGLUND was self-employed, teaching computer language courses through a business he founded under the assumed name "Faith Software." BERGLUND created the "Faith Software" assumed name with the Minnesota Secretary of State in 1995, and in 2009 he incorporated Faith Software with the Minnesota Secretary of State. BERGLUND was the owner and sole employee of Faith Software (hereinafter "FAITH").

2. During the tax years 2014, 2015, 2016, and 2017 (the "Tax Years"), BERGLUND earned an income teaching computer language courses through FAITH. Income that BERGLUND received through FAITH was reportable on his individual income tax returns for the Tax Years. BERGLUND could have filed Faith Software's tax return as a Schedule C with BERGLUND's individual income tax return, or as a separate Form 1120, U.S. Corporation Income Tax Return.

SCANNED
SEP 15 2020
U.S. DISTRICT COURT MPLS

3. BERGLUND has not filed a United States Individual Income tax return since 1997. FAITH has never filed a tax return of any kind.

4. BERGLUND has an extensive history of interactions with the IRS concerning taxes he owes and his duty to file tax returns. The IRS filed Substitutes for Return on BERGLUND's behalf for the 2007 and 2009 tax years that resulted in taxes due, assessments and levy actions. BERGLUND responded to these actions with numerous letters as well as three separate appeals and three petitions with the United States Tax Court contesting the IRS collection actions. The IRS collection actions were ultimately affirmed, and the Tax Court fined BERGLUND an additional $2,500 for advancing the same frivolous argument in his third petition after being warned not to do so.

5. In 2013 and 2017, BERGLUND filed lawsuits in Federal District Court related to his tax liabilities. In 2013, he sued the United States for, among other things, unauthorized collection actions; he later withdrew his case. In 2017, BERGLUND sued the IRS and a revenue officer and made similar arguments to those he made in Tax Court. The action was dismissed.

6. During the Tax Years, BERGLUND took steps that prevented his clients from providing information to the IRS that could be traced to him. He provided his FAITH clients with Forms W-9, Request for Taxpayer Identification Number and Certification ("W-9"), that contained a false Employer Identification Number ("EIN") and no social security number ("SSN"). A W-9 is an IRS tax form that is used to confirm a person's name, address, and taxpayer identification number so that

payments made to them can be accurately reported to the IRS, usually through the filing of a Form 1099-MISC, Miscellaneous Income ("Form 1099-MISC"). As a result, some FAITH clients filed Forms 1099-MISC using the fictitious EIN that BERGLUND had provided them, thus preventing the IRS from connecting that income to BERGLUND.

7. BERGLUND also asked clients to pay him in ways that could not be traced to him. For example, in 2017 he asked one client, an information technology education company, to pay him using money orders of less than $1,000 each, with the recipient/payee space left blank. In emails to coordinate his payments, BERGLUND acknowledged that he was purposely trying to avoid depositing his income into a bank.

8. In 2006, BERGLUND opened a Wells Fargo Bank account under the name Daniel L. BERGLUND d/b/a Faith Software. Between 2006 and 2011, BERGLUND deposited income that he earned from teaching computer language courses through FAITH. However, after the IRS contacted him in 2011 regarding the Substitutes for Returns, BERGLUND significantly curtailed his use of the Faith Software account, and instead deposited his clients' payments into other accounts where the funds would not be as easily traced to him, including his wife's personal checking and money market accounts. Of $1,065,607 in client payments received between 2011 and 2017, BERGLUND deposited just $50,817 in the Faith Software account. The remainder was split nearly evenly between accounts held solely in his wife's name ($476,680) and a joint personal checking account he held with his wife

($515,885), though his deposits increasingly shifted toward accounts held solely in his wife's name. In 2016 and 2017, BERGLUND deposited $202,973 in client payments into his wife's accounts, and just $21,307 into accounts bearing his name ($11,400 into the couple's joint checking account, and $9,907 into his Faith Software account).

9. During all times relevant to this Indictment, BERGLUND operated his business from Minnesota and elsewhere to include, among other actions: he worked from home while living in Minnesota; rented a mailbox in Minnesota that he used as his business address and to receive business correspondence; and he deposited client checks at financial institutions located in Minnesota.

10. BERGLUND's active evasion allowed him to evade the assessment of approximately $146,806 in taxes for the Tax Years, as alleged below in Counts 1-4.

## COUNT 1
(Tax Evasion – Evasion of Assessment)

11. Paragraphs 1-10 are realleged as if set forth herein.

12. During the 2014 calendar year, in the State and District of Minnesota, the defendant,

**DANIEL BERGLUND,**

had and received taxable income, upon which there was a substantial amount of income tax due and owing to the United States. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2015, as required by law, to any proper officer of the Internal Revenue Service, BERGLUND willfully attempted to evade and defeat the assessment of income tax due and owing by him

to the United States, for the calendar year 2014, by committing the following affirmative acts, among others:

    a. On or about November 23, 2005, BERGLUND provided Knowledge Transfer Consulting Services ("KTCS"), a FAITH client, with a Form W-9 that listed a fictitious EIN number for FAITH with the intent of concealing income he received from KTCS from the IRS. BERGLUND accepted payment from KTCS during the calendar year 2014 for services performed by Faith Software, believing that KTCS would report the payments to the IRS under the fictitious EIN number.

    b. On or about December 19, 2012, BERGLUND provided The Training Associates Corp. ("TTA"), a FAITH client, with a W-9 with the penalty of perjury statement removed, that included the fictitious EIN number for FAITH with the intent of concealing income he received from TTA from the IRS. BERGLUND accepted payment from TTA during the calendar year 2014 for services performed by FAITH, believing that TTA would report the payments to the IRS under the fictitious EIN number.

    c. On or about March 19, 2010, BERGLUND provided Technotraining, Inc. ("TTI"), a FAITH client, with a W-9 that included the fictitious EIN number for FAITH with the intent of concealing income he received from TTI from the IRS. BERGLUND accepted payments from TTI during the calendar year 2014 for services performed by FAITH, believing that TTI would report the payments to the IRS under the fictitious EIN number.

d. In or about 2010, BERGLUND provided Hands on Technology Transfer ("HOTT"), a FAITH client, with a W-9 that included the fictitious EIN number for FAITH with the intent of concealing income he received from HOTT from the IRS. On or about September 27, 2011, R.V.L., president of HOTT, requested BERGLUND provide HOTT with an accurate W-9 because IRS had notified HOTT that the taxpayer identification number it had reported for FAITH did not match IRS records. BERGLUND then provided HOTT with the same fictitious EIN number for FAITH that he had previously provided with the intent of continuing to conceal income he received from HOTT from the IRS. BERGLUND accepted payments from HOTT during the calendar year 2014 for services performed by FAITH, believing that HOTT would report the payments to the IRS under the fictitious EIN number BERGLUND had provided in 2010 and again in 2011.

e. On or about May 10, 2013, BERGLUND provided Wintrac, Inc., a FAITH client, with a W-9 that included the fictitious EIN number for FAITH with the intent of concealing income he received from Wintrac from the IRS. BERGLUND accepted payments from Wintrac during the calendar year 2014 for services performed by FAITH, believing that Wintrac would report the payments to the IRS under the fictitious EIN number.

f. On or about July 26, 2014, BERGLUND provided Batky-Howell, a FAITH client, with a W-9 with the penalty of perjury statement removed that included the fictitious EIN number for FAITH with the intent of concealing income he received from Batky-Howell from the IRS. BERGLUND accepted payments from

Batky-Howell during the calendar year 2014 for services performed by FAITH, believing that Batky-Howell would report the payments to the IRS under the fictitious EIN number.

      g.      BERGLUND's active evasion allowed him to avoid approximately $42,542 in taxes for 2014.

      All in violation of Title 26, United States Code, Section 7201.

## COUNT 2
(Tax Evasion – Evasion of Assessment)

13.    Paragraphs 1-12 are realleged as if set forth herein.

14.    During the 2015 calendar year, in the State and District of Minnesota, the defendant,

**DANIEL BERGLUND,**

had and received taxable income, upon which there was a substantial amount of income tax due and owing to the United States. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2016, as required by law, to any proper officer of the Internal Revenue Service, BERGLUND willfully attempted to evade and defeat the assessment of income tax due and owing by him to the United States, for the calendar year 2015, by committing the following affirmative acts, among others:

      a.      BERGLUND accepted payment from KTCS during the calendar year 2015 for services performed by FAITH, believing that KTCS would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2005.

b. BERGLUND accepted payments from TTI during the calendar year 2015 for services performed by FAITH, believing that TTI would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2010.

c. BERGLUND accepted payments from HOTT during the calendar year 2015 for services performed by FAITH, believing that HOTT would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2010 and 2011.

d. BERGLUND accepted payments from Batky-Howell during the calendar year 2015 for services performed by FAITH, believing that Batky-Howell would report the payments to the IRS under the fictitious EIN number he had provided to them in July 2014.

e. BERGLUND's active evasion allowed him to avoid approximately $35,736 in taxes for 2015.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 3
(Tax Evasion – Evasion of Assessment)

15. Paragraphs 1-14 are realleged as if set forth herein.

16. During the 2016 calendar year, in the State and District of Minnesota, the defendant,

**DANIEL BERGLUND,**

had and received taxable income, upon which there was a substantial amount of income tax due and owing to the United States. Knowing the foregoing facts and

8

failing to make an income tax return on or before April 15, 2017, as required by law, to any proper officer of the Internal Revenue Service, BERGLUND willfully attempted to evade and defeat the assessment of income tax due and owing by him to the United States, for the calendar year 2016, by committing the following affirmative acts, among others:

    a.    BERGLUND accepted payment from KTCS during the calendar year 2016 for services performed by FAITH, believing that KTCS would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2005.

    b.    BERGLUND accepted payments from TTI during the calendar year 2016 for services performed by FAITH, believing that TTI would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2010.

    c.    BERGLUND accepted payments from HOTT during the calendar year 2016 for services performed by FAITH, believing that HOTT would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2010 and 2011.

    d.    BERGLUND's active evasion allowed him to avoid approximately $37,418 in taxes for 2016.

All in violation of Title 26, United States Code, Section 7201.

### COUNT 4
(Tax Evasion – Evasion of Assessment)

17.    Paragraphs 1-16 are realleged as if set forth herein.

18. During the 2017 calendar year, in the State and District of Minnesota, the defendant,

**DANIEL BERGLUND,**

had and received taxable income, upon which there was a substantial amount of income tax due and owing to the United States. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2018, as required by law, to any proper officer of the Internal Revenue Service, BERGLUND willfully attempted to evade and defeat the assessment of income tax due and owing by him to the United States, for the calendar year 2017, by committing the following affirmative acts, among others:

    a. BERGLUND accepted payment from KTCS during the calendar year 2017 for services performed by FAITH, believing that KTCS would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2005.

    b. BERGLUND accepted payments from TTI during the calendar year 2017 for services performed by FAITH, believing that TTI would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2010.

    c. On or about April 28, 2017, BERGLUND provided a new W-9 to R.V.L., president of HOTT, with the same fictitious EIN number for FAITH as he had provided the company in 2010 and 2011. BERGLUND provided the new W-9, with the same fictitious EIN, at R.V.L.'s request, with knowledge that R.V.L. sought the

EIN in response to an IRS inquiry. On or about May 12, 2017, in response to another inquiry from his client, BERGLUND informed R.V.L. that "Faith Software, Inc.," had the same EIN as "Faith Software DBA," with reference to the fictitious EIN he had provided in 2010, 2011, and again on April 28, 2017. Also on or about May 12, 2017, BERGLUND informed R.V.L. that he preferred to keep his social security number private and bill HOTT through his company, Faith Software.

    d. BERGLUND accepted payments from HOTT during the calendar year 2017 for services performed by FAITH, believing that HOTT would report the payments to the IRS under the fictitious EIN number he had provided to the client in 2010 and again on April 28, 2017.

    e. On or about February 8, 2017, BERGLUND provided Top Notch IT, a FAITH client, with a W-9 that listed a fictitious EIN number for FAITH with the intent of concealing income he received from Top Notch IT from the IRS. BERGLUND accepted payment from Top Notch IT during the calendar year 2017 for services performed by FAITH, knowing that if Top Notch IT reported the payments to the IRS, they would use the fictitious EIN number and his income would be concealed from the IRS.

    f. On or about February 5, 2017, BERGLUND asked Neuralworks, a FAITH client, to pay him by money order in denominations of $1,000 or less, with the payee/recipient left blank. He told the client, "I cannot use a bank. I need to pay my bills using money orders." The client refused his request.

      g.     BERGLUND's active evasion allowed him to avoid approximately $31,110 in taxes for 2017.

All in violation of Title 26, United States Code, Section 7201.

A TRUE BILL

_____     _____
UNITED STATES ATTORNEY            FOREPERSON